Sandra Lee **SCHELSKY**, Respondent,

v.

Joseph A. **SCHELSKY**, Appellant.

No. 56444.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 26, 1990.

David L. Hoven, Pacific, for appellant.

Timothy H. Battern, St. Louis, for respondent.

JOSEPH J. SIMEONE, Senior Judge.

Husband appeals the trial court's judgment in wife's action for dissolution of marriage. We affirm in part and reverse in part and remand for further proceedings.

The parties were married on May 3, 1964. Wife filed a petition for dissolution of marriage on January 12, 1987 and trial was held on June 3, 1988. At the time of trial, the two children born of the marriage, ages 22 and 20, were emancipated. Husband was 42 years of age and wife was 39.

The parties owned a 3.13 acre parcel of real estate in Robertsville, Missouri, which they purchased in 1982 for $20,000. When purchased, the property contained a residence. The parties made numerous improvements to the property including building a 30' × 30' foot barn and a 30' × 30' foot garage. In May 1986, before the garage was completed, the house burned down and the parties received $77,000 in fire insurance proceeds. At the time of separation in 1986, only $33,000 of this amount remained; the rest had been spent on completing the garage, on purchasing $20,000 of furniture for wife, on a truck and on wife's living expenses. Husband testified the value of the real estate was $6,000 to $8,000. Wife thought it might be worth $50,000 although she admitted that she did not have it appraised. At the suggestion of the court, an appraiser was employed who valued the property at $9,500.00.

The parties also owned the following personal property. Wife drove a 1984 Dodge 600 on which $2,750 was owed. Husband drove a 1983 Chevrolet diesel truck. Wife opined the truck was worth $10,000 and had $3,000 to $4,000 debt. Husband testified the truck was purchased for $7,500 in 1986, that he had been offered $2,000 on the truck as a trade in and that the debt against the truck was $4,600.00. The parties also owned three non-operative four wheel drive vehicles: a 1981 Scottsdale vehicle which wife testified was worth $4,000; a 1979 vehicle; and the frame of a 1973 vehicle. In addition, there was an Allis-Chalmers tractor purchased for $3,200.00 and a Snapper lawn mower purchased for approximately $1,900.

Husband, a laborer and a member of a union, has a pension plan through his union in which he is vested, but will not receive full pension benefits until he retires at age 62. If he retires early, husband's monthly benefit would be reduced one half of one percent for each month he is under age 62. At the time of trial, husband had accrued a monthly benefit worth $558.50 per month if he does not retire early.

Wife worked during the marriage and at the time of trial was employed as a bookkeeper earning $8.00 per hour. Her monthly income was approximately $920 a month at the time of trial. She attended E. Central College and took financial accounting courses. She is also qualified as a computer operator and is a qualified accounts receivable bookkeeper, which is her specialty. Wife earned $21,429.72 in 1984, $19,858.00 in 1985, $10,800 in 1987, but did not work in 1986. For the six months prior to trial, wife suffered from acute depression which caused her to miss 66 days of work. Wife's expenses were approximately $1,013 a month. Husband is a general laborer for a construction company and earns approximately $17.21 per hour and earned approximately $14,000 up to the time of trial in June, 1988. He earned $34,000 in 1986 and $42,000 in 1987. Husband has been employed as a union laborer for over twenty years.

Wife testified that between 1984 and 1987, she observed husband meeting with a woman during which meetings they would kiss and hold each other. Wife offered as evidence three cards and a letter found in husband's truck or clothing which were admitted as exhibits. They did not contain names, but were of an affectionate nature. The parties' son testified that he found one of the cards in his father's truck along with a bra.

Wanda Wolf, a private investigator employed by wife, observed husband and the woman together on three occasions, once in 1986 and twice in 1987. On one occasion, Ms. Wolf observed husband's car in a parking lot next to the woman's car. All the windows of the car were fogged up except the front window and no one was visible in the front seat. Ms. Wolf also observed husband and the woman in "a coupling position." The parties' daughter testified that the woman had called husband several times prior to the May 1986 fire and that once, nine years ago, she had seen her father and the woman applying baby oil to each other's backs at a swimming pool.

A co-employee of husband testified that she saw husband eat lunch with another woman and gave the impression that they were involved in a relationship. This woman and husband had stayed at the co-employee's home all night together.

Wife also presented testimony, which was corroborated by her son, that husband entered her apartment in April 1988 and destroyed her furniture and two sewing machines, one of which was worth $2,600, with a sledgehammer and knife which were used to smash and cut the furniture.

Husband denied engaging in any extra-marital affair and stated that he was just friends with the woman. He admitted destroying wife's furniture.

The trial court found that: (1) the property in Robertsville had a value of $14,130.00; (2) the present value of husband's pension fund was not ascertainable because he was only 42, but was vested; (3) husband was entitled to receive $558.00 per month at age 62 and this benefit was marital property; (4) husband developed "affectionate relationships with adult females other than his wife in violation of marriage vows"; (5) husband destroyed marital property worth $22,000; and (6) wife required maintenance because "she is unable to support herself in the same lifestyle as during the marriage."

The court then ordered the real property sold, $2,200 of the proceeds distributed to the husband and the remainder divided equally between the parties. The order provided that the wife was to receive 40% of the pension plan benefits, and that the benefits were ripe for distribution. The order also provided that wife was to receive $24,900 of the funds remaining from the fire insurance, the 1984 Dodge and the 1979 Chevrolet four wheel drive. Husband, according to the order, received the remaining automobiles, $8,100 of the fire insurance proceeds and was ordered to pay wife $11,000 for the furniture he damaged. Husband was also ordered to pay wife $350.00 per month maintenance provided that any pension benefits received would be set off against the maintenance award to reduce the amount of maintenance husband has to pay. Husband appeals from this judgment.

We consider the appellant's contentions on appeal in the light of well-established principles of law. Tested by these principles we find no abuse of discretion.

■ An order and judgment in a case of this kind must be affirmed if there is substantial evidence to support it, it is not against the weight of the evidence, and neither erroneously declares nor applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To set aside a judgment on the ground that it is against the weight of the evidence, there should be a firm belief that the decree is wrong. In divorce proceedings, the trial court has discretion in the division of marital property and a proper and just division is not necessarily an equal one. *Woods v. Woods*, 713 S.W.2d 292, 293 (Mo.App.1986).

Husband's first point relied on argues that the trial court erred in awarding permanent maintenance of $350 per month to wife because there was not sufficient evidence to support this award. The argument portion of this point contends that the court applied the wrong standard. The trial court specifically found that "there is a need to award maintenance to petitioner as she is unable to support herself in the same lifestyle as during the marriage." Husband argues that the court placed too much emphasis on allowing respondent to retain her standard of living while married.

■ Pursuant to § 452.335.1, RSMo Cum.Sup.1989, a court may award maintenance if a party lacks sufficient property to provide for his reasonable needs and is unable to support himself through appropriate employment. The court may look to numerous factors to determine an appropriate maintenance amount. Section 452.335.-2. The factors include the comparative earning capacity of each spouse; the duration of the marriage; the age, physical and emotional condition of each spouse; the

standard of living established during the marriage; and the ability of the spouse from whom maintenance is sought to meet his needs and the conduct of the parties during the marriage. *Id.* The fact that a party is employed and healthy does not mean they may not receive maintenance; the important test is whether wages and income producing assets are sufficient to meet reasonable living expenses. *In re Marriage of Souter*, 700 S.W.2d 545, 546 (Mo.App.1985); *Klenke v. Klenke*, 742 S.W.2d 621, 624 (Mo.App.1987).

■ Wife earned approximately half of what husband did on an hourly basis and she was suffering from an illness that caused her to miss work often. Her income at time of trial was $920 per month. Also, given the fact that she had seventeen years of experience in her field, there was no indication that wife's earning capacity would change significantly in the future.

Husband places much emphasis on the fact that wife's expense statement only showed $613.50 in monthly expenses and she testified to $400.00 per month rent on top of that. He thus calculated her expenses as $1013.50 per month. That expense statement, however, did not include amounts for food, clothing, insurance or medical care. We cannot find it was an abuse of discretion for the court to award wife the $350 a month in maintenance given the standard of living during the twenty-four year marriage, wife's stated expenses, her reasonable additional needs and husband's ability to pay that amount. Absent an abuse of discretion, the trial court's decision will not be disturbed. *Murphy v. Carron, supra,* 536 S.W.2d at 32.

The authority husband cites to support this argument is inapposite. *Hagar v. Hagar,* 722 S.W.2d 358 (Mo.App.1987), involved an appeal from the *denial* of maintenance. *Arnold v. Arnold,* 771 S.W.2d 914 (Mo.App.1989), concerned a maintenance award which exceeded both the receiving party's needs and the maintaining spouse's ability to pay. *Hauser v. Hauser,*

625 S.W.2d 924 (Mo.App.1981), is cited in an attempt to denigrate the court's reliance on the marital standard of living. That case held that the reasonable needs of the parties is the proper standard. *Id.* at 926. In this case, the award of maintenance met the reasonable needs test.

■ In determining the amount of maintenance, while the trial court must follow the provisions of section 452.335, it has discretion and it is the husband's "stark burden" to show an abuse of such discretion so as to "shock" the appellate court's sense of justice. *Diehl v. Diehl,* 670 S.W.2d 590, 591 (Mo.App.1984). In determining the amount of maintenance the trial court must balance the reasonable needs of the spouse seeking maintenance against the husband's capacity to pay and the spouse's past and present earnings of such capacity. To warrant an appellate court's interference, the amount of maintenance must be patently unwarranted and wholly beyond the means of the spouse who pays maintenance. *Bull v. Bull,* 634 S.W.2d 228, 229 (Mo.App.1982); *Reeber v. Reeber,* 680 S.W.2d 358, 359 (Mo.App.1984); *Woods v. Woods,* 713 S.W.2d 292, 293 (Mo.App. 1986).

■ Husband's second point concerns the trial court's division of husband's pension plan. The point relied on describes the error as disposing of "appellant's interest in his pension and retirement plan, in that the court failed to assign a value to appellant's interest in the plan, thereby rendering it impossible to determine whether or not the court's division of marital property was equitable." In the argument supporting this point, husband claims there was insufficient evidence for the court to determine the value of the pension plan then attacks the award of 40% of the benefits to wife because that award allows her to share in contributions to the plan made after dissolution.

In *Hedgecorth v. Hedgecorth,* 696 S.W.2d 862, 864 (Mo.App.1985), which husband relies upon, this court held that wife is not

entitled to share in contributions to husband's pension plan made by the husband subsequent to the dissolution of the marriage and thus the trial court erred in dividing the amount of pension fund between the parties. In *Hedgecorth*, there was no evidence in the record to show how much the plan was worth on the date of dissolution, so we remanded the cause to the trial court to determine the value of the plan on that date, of which half would go to wife. *Id.*

In the case at bar, the trial court found that husband's pension plan was worth $558.00 per month if appellant had been age 62 at the time of trial. There is no substantial evidence in the record to determine the value of the pension plan at the time of trial or at the time of the entry of the decree of dissolution. The value of the pension plan may be determined, and when such a determination is made, the wife may, in the discretion of the court, be entitled to 40% or other portion of such amount as of the date of the entry of a decree which sum may reduce the amount of maintenance. The wife, pursuant to *Hedgecorth* is not entitled to any increases in the pension plan reflecting later contributions to the plan. Therefore, the cause must be remanded for further proceedings.

Husband's third point claims the court erred in evaluating the real property at $14,130.00 because such value was not supported by the evidence. He acknowledges that the trial court need not accept expert appraisal testimony as to value and may choose instead to accept value as testified to by the parties. *Hopkins v. Hopkins*, 639 S.W.2d 249 (Mo.App.1982). Nevertheless, he requests this court to remand the case to the trial court so that value may be re-entered in accordance with the appraiser's value of $9,500.00.

■ This argument fails, first, because it does not indicate any material error. Rule 84.13(b). The property was ordered sold and the proceeds, minus a reimbursement of expenses to husband, were to be divided equally between the parties. The valuation of the real estate has no practical effect on the distribution of the marital property.

■ Second, the value assigned was not substantially larger than the value opined by husband's appraiser and was substantially less than the value testified to by wife. In addition, the appraised value of the garage was only $4,000 while husband testified he spent at least $5,255.00 to build that structure and wife testified $9,100 was spent on material costs alone. Where there is a conflict in evidence of property value, deference must be given to the trial judge to resolve the conflict. *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 265 (Mo. App.1988). We conclude that there was no abuse of discretion.

Finally, husband challenges the trial court's finding that he engaged in marital misconduct and contends that the court erred in the admission of the letter and the three cards into evidence. He argues there was insufficient evidence to support the finding of misconduct. At trial, husband objected to the admission of the exhibits on the grounds that they were irrelevant both in that they belonged to him and because any misconduct they showed occurred after separation of the parties in December, 1986 or January, 1987. The court agreed, but stated that went to the weight of the evidence not its admissibility.

■ As to husband's first point, the evidence was sufficient to support the court's finding that husband engaged in "affectionate relationships" with other females. Wife testified her suspicions of misconduct led to the demise of the marriage and there was evidence indicating her suspicions were valid. It is immaterial that the evidence did not prove sexual relations since the court did not find husband had engaged in extramarital sexual relations.

■ Husband's objection to the admission of the exhibits was relevancy. Letters which alone are not relevant to prove misconduct may become relevant because

of the circumstances in which they were found and because of other, related issues of misconduct. *Crowley v. Crowley*, 360 S.W.2d 293, 296 (Mo.App.1962). In addition, circumstantial evidence is admissible in civil cases. *Jordon v. Robert Half Personnel Agencies of Kansas City*, 615 S.W.2d 574, 587 (Mo.App.1981). The setting in which these items were found is circumstantial evidence linking them to husband. Although they were found after the separation, they could be evidence of a continuing affectionate relationship that was initiated prior to separation. The trial court did not abuse its discretion in admitting these exhibits into evidence.

We have read the entire record, the briefs, and the authorities relied upon, and conclude that, under the principles of *Murphy v. Carron*, 536 S.W.2d at 32, the judgment is affirmed in all respects, except as to that part of the order awarding wife an interest in the pension plan.

The judgment of the trial court is, therefore reversed and the cause remanded for further proceedings.

CARL R. GAERTNER, P.J., and STEPHAN, J., concur.