Jane J. HOWERTON, Appellant,

v.

Webb Allen HOWERTON, Respondent.

No. 16265.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 10, 1990.

Brad D. Eidson, Houston, for appellant.

William E. Gladden, Houston, for respondent.

WASSERSTROM, Senior Judge.

The parties married on January 10, 1981, and that marriage was dissolved by decree in this case on February 2, 1989. At the time of the marriage, the wife had two children by a prior marriage and owned a home in the State of Washington. Following the marriage, she sold the home for $4,000 and cashed a retirement fund from which she received $2,000. At the time of the marriage, the husband had $20,000 to $24,000 savings and stock in the Texas County Post Company, a family corporation by which he was employed.

The wife at that time was a civil service employee of the federal government in the State of Washington. When the parties moved to Missouri after the marriage, the wife transferred her employment to Ft. Leonard Wood without any break in her employment status.

After the move to Missouri, the spouses pooled their funds to purchase a 32–acre tract on which there was a small house, giving back a purchase money mortgage. They also borrowed additional money from the husband's parents with which to build a new house on the 32–acre tract. Materials for the new house ran to $80,000; each party contributed labor to the building of the new house.

In about 1984 or 1985, the Texas County Post Company was liquidated and the husband received $67,000 to $68,000 as the proceeds of his stock. About that time, the parties entered into a tanning bed business, for which they purchased six tanning beds. Both worked in the business, but the wife spent the more time. The business was successful at first, but it gradually became unprofitable. At the time of the hearing, only one tanning bed was in operation, on a leased basis.

In 1985, the husband's grandmother died. Either by earlier gift from her or by inheritance from her estate, the husband received a one-fourth interest in 160 acres of land and certificates of deposit amounting to $16,081.90.

A son was born to the parties in November 1981. In consequence, the wife took leave from her government job at Ft. Leonard Wood and did not return to that job until April 26, 1986. She then continued in that job until June 1988, when she transferred to Leavenworth, Kansas, for a new civil service job at a comparable salary but with better future pay and prospects of advancement.

The husband introduced considerable evidence to show infidelity on the part of the wife. The evidence shows considerable friction developed between the parties in that connection in the latter phase of the marriage. Although the wife denied any sexual infidelity, the trial court found that both before and after the separation of the parties in March 1988, she was engaged in an extramarital affair.

After extensive evidence, the trial court entered a decree granting custody of the son to the wife, setting apart certain property to be separate and not subject to division, dividing the marital property, and ordering the husband to pay child support and a portion of the wife's attorney's fee. The wife appeals, asserting that: (1) the distribution of marital property to the wife was inadequate; (2) the amount of the child support was inadequate; (3) the valuation of marital property was erroneous; and (4) the amount of attorney fee ordered to be paid by the husband was inadequate. Points I and III are closely related and will be discussed together.

I

*Division of Marital Property*

In its decree, the trial court allocated to each party the following items of marital property at the following valuations:

To the Husband

| Real Estate (equity) | $51,915.81 | |
|---|---|---|
| 3 Tanning Beds | 6,000.00 | |
| 1986 Pickup Truck | 6,500.00 | |
| ATV and 1977 Pickup Truck | 1,250.00 | |
| Personal Property | 4,000.00 | |
| IRA | 2,000.00 | |
| Life Insurance | 4,000.00 | |
| TOTAL | $75,665.81 | |
| | | $ 75,665.81 |

To the Wife

| Loans due from members of the wife's family | 11,000.00 | |
|---|---|---|
| IRA | 2,000.00 | |
| Amount withdrawn from bank | 700.00 | |
| Amount withdrawn from retirement fund | 212.59 | |
| Life Insurance Policy | 2,000.00 | |
| 1983 Cutlass | 6,500.00 | |
| 1 Tanning Bed | 2,000.00 | |
| Personal Property | 8,000.00 | |
| TOTAL | $39,912.59 | |
| | | $ 39,912.59 |
| TOTAL MARITAL PROPERTY | | $115,578.40 |

———

The court set off to the husband as his separate property, not subject to division, the following:

| Certificates of Deposit | $16,081.90 |
|---|---|
| Real Estate | 4,000.00 |
| Adkinson Note | (value not found) |

The court also found that the wife was entitled to separate property consisting of a television and a mirror, both of which were in possession of the husband, and the husband was ordered to pay her $400.00 for those items. Prior to trial, the husband, pursuant to agreement of the parties, paid $3,000 to the wife toward division of marital property. After trial and as part of the decree, the court ordered the husband to pay the wife an additional $4,500 toward equalization of distribution of marital property.

The wife challenges some of the above valuations and those disputes, as well as others raised by the husband, deserve answer:

■ 1. *The real estate.* The wife's valuation of the marital real estate before mortgage indebtedness is $110,000, whereas the husband's valuation is $80,000. A professional appraiser placed the valuation at $88,000. The court's valuation of $90,-000 represents a fair balance of those figures. The court's valuation of this item cannot reasonably be faulted.

The husband in his brief places a slightly lower valuation on the equity, based on an indebtedness figure of $38,278.62, which is shown on his Statement of Property. However, the court used an indebtedness figure of $38,084.19, to which the husband testified in court. The court's figure in this regard is accepted.

2. *The furniture and household goods.* Valuation of household goods and furniture is usually subjective and highly variable. Not surprisingly, therefore, the parties place values far apart on these many items. To take an extreme example, the wife values an antique organ in her possession at $500, whereas the husband sets a value of $1,400. As to other items, the description or grouping of items are so dissimilar as to make comparison speculative if not impossible.

The trial court placed values on goods taken by the wife at $8,000 and that which she left for the husband at $4,000. A review of this record does not show those

valuations to be unreasonable or an abuse of discretion.

3. *The Licking bank account.* The wife contends that the trial court incorrectly omitted an alleged Licking bank account in the sum of $1,200 from the list of marital assets in the husband's possession. At one point in his testimony, the husband stated that he had such a savings account at the Peoples Savings Bank in Licking with an amount in the neighborhood of $1,200. On the very next page of the transcript, he denied having any account at Licking. He should be held down by the initial detailed admission.

4. *The tanning bed sale proceeds.* The wife contends that $5,000, being the proceeds of the sale of two tanning beds in 1987, should be added to the husband's share of marital property. The husband testified he used that $5,000 to pay bills. The trial court cannot be faulted for accepting that uncontradicted testimony.

5. *Expenditures by the husband.* The wife suggests that the husband has not adequately accounted for $20,000 to $24,000 in savings (held by him at the time of the marriage) and the $60,000 odd (received by him from liquidation of the Texas County Post Company), all of which he says was spent in building the home or on other bills. The husband did so testify. The wife's suspicions to the contrary do not refute that evidence. The trial court's acceptance of the husband's testimony cannot be considered an abuse of discretion.

Adjusting the husband's share of marital property by adding in $1,200 for the Licking bank account, his total comes to $76,865.81, and the total marital property comes to $116,778.40. The husband's share, therefore, amounts to 65.8 per cent of the total, while the wife's share is 34.2 per cent. That percentage division, while heavily favorable to the husband, does not automatically become unfair. *Hayes v. Hayes,* 792 S.W.2d 428 (Mo.App.1990).

Section 452.330, V.A.M.S. (as amended by Laws 1988), commands that in the division of marital property the court shall consider: (1) the economic circumstances of each spouse; (2) the contribution by each to the marital property; (3) the value of the nonmarital property set off to each; (4) the conduct of the parties; and (5) the custodial arrangements for minor children. The trial court in its decree expressly stated that in dividing the marital property it was giving consideration to factors (1), (2) and (4) listed above. Of those, factor (2) weighs particularly strongly in the husband's favor. Both parties contributed to the property accumulated their personal earnings and work on the house and from the tanning business. In addition, however, the husband contributed savings of at least $20,000 and stock proceeds of at least $67,000, totaling $87,000 cash capital contribution, compared to the wife's $6,000 cash contribution. It should be noted that under the decree she receives a return of that $6,000 contribution.

Also substantially in the husband's favor is factor (4). The trial court found that the wife was engaged in an illicit sexual affair prior to the separation of the parties, and the evidence makes clear that this misconduct caused or largely contributed to the marriage failure. The wife's misconduct therefore must enter into the balance. See *Divine v. Divine,* 752 S.W.2d 76 (Mo.App. 1988).

However, the trial court did not mention statutory factor (5). The statute did not list that factor until the 1988 revision, and its addition must be taken to signify some change of importance by way of legislative intention. Protecting the financial maintenance and support of children, until the 1988 statutory provision, primarily depended on the allowance of child support under § 452.340. Under the 1988 statutory revision, § 452.330 joins in that function.

In the present situation, § 452.330 appears the more appropriate method to use, because the father has very modest current earnings, but has a rather substantial capital holding and one which much overshadows that of the mother. Under the circumstances of this case, the distribution of marital property to the wife should be increased by ordering the husband to pay to her $10,000 in addition to the sum specified

in the existing decree entered by the trial court. This additional $10,000 shall be payable in one hundred equal monthly installments of $100 each.

## II

### Child Support

■ The award of child support was governed at the time of the decree here by § 452.340, RSMo 1986. By the Laws of 1989, that section was amended to provide for guidelines to be adopted by the Supreme Court. Such guidelines were adopted on October 2, 1989, mandatorily effective April 1, 1990.

Although those guidelines were not even available to the trial court at the time of its decree in this case, counsel have furnished computations pursuant to the new Supreme Court guidelines, and those guidelines issued under Rule 88 constitute a reasonable template by which to measure at least to some extent the $200 monthly child support ordered to be paid by the husband. Counsels' computations under the guidelines differ widely: The wife shows that the husband should pay $300.90 monthly, whereas the husband's figures show only $185.22. Set forth below is the computation which this court has made, followed by comments on specific items.

| | Custodial Parent (Mother) | Non–Custodial Parent (Father) | Combined |
|---|---|---|---|
| Monthly Gross Income | $1,033.00 | 1,335.00 | 2,368.00 |
| Child Support Obligation (from Supreme Court Schedule) | | | 380.00 |
| Custodial Parent's Child Care Costs | | | 130.00 |
| Combined Child Support Cost | | | 510.00 |
| Proportionate Shares | 43.6% | 56.4% | |
| Each Parent's Support Obligation | 222.36 | 287.64 | |
| Presumed Child Support Amount | | 287.64 | |

With respect to the husband's income, the wife calculates that at $1,480 instead of the $1,335 shown above. She arrives at her figure by computing his salary as bi-weekly and further adding $150 income from the rental house and $30 income from the tanning bed on lease. She exaggerates the husband's salary because he receives $600 semi-monthly, not bi-weekly. As to the tanning bed rental income, that should be reduced by the $25 expense shown by the husband's Statement of Property, and the house rental income should be reduced by the $20 expense shown on that Statement. The husband's computation of the rental house income is also improper because he attempts to deduct an additional $303.95 mortgage payment which is shown by his Statement. Such a deduction would be im-

proper because it is not divided between interest and principal, and more importantly the big majority of the mortgage payments are with respect to the new house in which the husband now lives and has little to do with the rental house.

As to the wife's child care cost, the $130 figure is shown on her statement of income and expenses dated March 15, 1988. After that date, she moved to Weston, Missouri, where the expense may be different, and the child has moved on from kindergarten and consequently has less hours to be spent in a day care center. Therefore, the $130 monthly may no longer be accurate. However, this reduction is offset by the fact that no account has been taken of the court's order that the wife provide health insurance coverage for the child, and no

account has been taken above with respect to the income received by the husband from the separate property set off to him and which is income-producing.

Nevertheless, the $287.64 figure derived from use of the Supreme Court guidelines under Rule 88 must be modified because of other considerations: (1) When the parties separated, they entered into an agreement stipulating that the husband pay $200 per month for child support during the pendency of the dissolution action. No one can know their financial situation and needs better than the parties themselves, and their agreement strongly indicates that $200 per month constitutes an appropriate child support provision. (2) The wife has two children from a prior marriage and receives some child support from her previous husband with respect to those children. Obviously, the cost per child declines with additional children in the home. This difference in cost per child is recognized by and reflected in the Supreme Court schedule where there is more than one child of a marriage being dissolved; but no similar recognition is given or provision made with respect to a situation such as here where the custodial parent has children from a prior marriage living in the home. (3) Of very great importance, the needs of this child have already been considered and given provision under Section I of this opinion. (4) The wife expected an increase in earnings and advancement in her work by reason of her change to Ft. Leavenworth. (5) The Supreme Court guidelines, although of some general assistance, are not binding because the decree here was entered before the effective date of the guidelines. (6) A wide discretion is vested in the trial court with respect to the granting of child support, and that discretion is expressly retained under § 452.340–8. See also *Langdon v. Langdon,* 792 S.W.2d 645, 649 (Mo. App.1990).

Balancing all the factors, the exercise of the trial court's discretion with respect to the amount of child support will be accepted and is affirmed.

## III

### *Attorney Fees*

 For her final point, the wife argues that the trial court erred in ordering the husband to pay only $1,000 toward her attorney's fees, that sum being less than one-half of the total fees billed to her by her counsel. The allowance of attorney's fees is discretionary and will be reversed only for an abuse of discretion. *Casper v. Casper,* 792 S.W.2d 676, 679 (Mo.App. 1990).

The economic circumstances of the parties have already been discussed above in connection with other points. The consideration of this issue in light of those circumstances show no abuse of discretion by the trial court.

The judgment of the trial court is hereby modified by ordering the husband to pay, in addition to other provisions of that decree, a further $10,000 toward equalization of the marital property division, payable at the rate of $100 per month for one hundred months, and as so modified the judgment is affirmed.

MAUS and SHRUM, JJ., concur.