Jerry E. **THEILEN**

v.

Virginia D. **THEILEN.**

No. WD 45658.

Missouri Court of Appeals, Western District.

Nov. 24, 1992.

---

John R. Shank, Jr., Gunn, Shank & Harman, P.C., Kansas City, for appellant.

Michael P. Keleher, Keleher & Eastman, Gladstone, for respondent.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SMART, Judge.

This dissolution of marriage proceeding raises questions concerning the valuation of certain marital property interests and concerning the adequacy of maintenance and child support awards. Judgment is affirmed in part and modified in part.

Dr. Theilen ("Husband") is a 43 year old dentist practicing in Claycomo, Missouri. He had been married to his wife, Virginia, almost 19 years at the time of the decree. He has been practicing dentistry 15 years. He and his twin brother, James Theilen, each own fifty percent of the stock in their professional corporation. He and his brother are partners in a real estate partnership (Twin Center) which owns the building occupied by their practice. In addition, they are partners in a venture (Dental Data) which owns and leases equipment to their professional corporation.

The trial court calculated Husband's stock in the professional corporation to have a value of $105,000.00. The value of Husband's general partnership interest in Twin Center Partnership was determined to be $80,000.00. The court valued Husband's interest in Dental Data Services at $60,000.00. Thus, Husband's interest in the three entities together was $245,000.00. The marital residence was found to have a net value of $127,000.00. Other marital property was valued at $146,391.00.

Husband was ordered to pay $1,040.00 in child support for his two teenage daughters, $520.00 for each child. Husband was also ordered to pay Mrs. Theilen ("Wife") $800.00 per month in maintenance. $92,970 in marital property was awarded to Wife, and Husband received $53,421 in other marital property. Husband, who was awarded the residence and the businesses, was ordered to pay $166,226.00 to Wife as additional distribution of marital property.

Appellate review of this action is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which require the trial court's judgment to be affirmed unless it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law.

### Twin Center Partnership

Husband's first point on appeal is that the trial court erred in finding the net value of the Twin Center Partnership to be $160,000.00. Husband contends that the sole asset of the partnership, a commercial building, is encumbered by a debt which exceeds its fair market value.

Thomas Smeed, Husband's expert, testified at trial that in his opinion the commercial building in which Husband's dental practice is housed had a fair market value of $825,000.00 and an outstanding debt of $867,438.00, resulting in a negative value of $42,438.00. The building, which was completed in 1985, contains about 9,200 square feet. It is a two story building. The primary tenant of the building is the dental practice of Jerry and James Theilen, which occupies the first floor. The building had recently lost the other tenants in the building. The evidence did not reveal any particular reason to expect the building to continue to lack occupancy. Robert Boland, Wife's expert, testified that the net value of Husband's interest in the partnership was $118,949.00. Using the capitalization of income approach, Mr. Boland calculated the value based upon a weighted average of the previous four years and nine months of the partnership's operation. Mr. Boland testified that a valuation method focusing on the vacancies in the building would not be appropriate because this type method ignores the cyclical nature of real estate. Wife's expert used a capitalization of income method which took into account the financial data of past years in determining a current value. The court's valuation of the partnership interest at $80,000.00 was within the range of the two valuations. *See Howerton v. Howerton*, 796 S.W.2d 665, 667 (Mo.App.1990). It is the trial court's job to analyze all of the evidence and assess the credibility of

the witnesses. When the trial court calculates an amount that is "within the range of evidence, an appellate court generally will not find the determination erroneous or weigh the evidence." *In re Marriage of Lewis*, 808 S.W.2d 919, 925 (Mo.App.1991); *see also Vohsen v. Vohsen*, 801 S.W.2d 789, 792 (Mo.App.1991). The trial court's determination was within the range of the values testified to and therefore, cannot be faulted. Point I is denied.

### Dental Data Services

■ Husband's second argument on appeal is that the trial court erred in valuing his interest in Dental Data Services at $60,000.00, because such a value is based upon an historical approach of capitalization and fails to take into account current economic conditions. In his brief, Husband refers this court to a profit and loss statement dated October 8, 1991, for Dental Data Services. In the comments on this statement, Husband states that Theilen & Theilen is two months behind on its rent payments to Dental Data due to cash flow problems and that Dental Data has had to purchase $26,314.32 of additional equipment. Husband did not offer testimony at trial as to the value of his interest. Mr. Boland, Wife's expert, testified that the partnership interest was worth $124,515.00 in 1990, and that he had insufficient data from which to base the value in 1991 because he had never received from appellant the financial documents he had requested to make this determination. Mr. Boland utilized a cash flow method with a weighting factor in valuing the partnership interest. The trial court valued the interest at $60,000.00. Again, based upon the evidence presented, the trial court's valuation fell within the range of the evidence. *Lewis*, 808 S.W.2d at 925. Husband has not shown any error on the trial court's valuation. Point II is denied.

### Theilen & Theilen, D.D.S., P.C.

Husband challenges the trial court's valuation of his interest in the professional corporation at $105,000.00. He argues that this determination is erroneous in that it relies on the capitalization of income approach. In valuing the professional corporation, Husband's expert, Mr. Smeed, utilized an approach he called the "Comparable Characteristics" method which calculates a fair market value based on valuation of three components: 1) the in-place value of physical assets; 2) the face value of consumable supplies; and 3) the value of any intangible assets. Mr. Smeed's valuation included valuation of the dental equipment ($37,995.00), office furnishings and equipment ($2,600.00), dental supplies ($5,000.00), office supplies ($200.00), accounts receivable (he valued Husband's share at $16,707.20)[1] and intangibles ($0.00). Mr. Smeed testified that he valued intangibles at zero because of the difficulty of predicting where Husband's patients would go after a sale of his interest to a third party. Mr. Smeed also did not include the value of any corporation bank accounts. Wife's expert, Mr. Boland, took another approach to value, employing a capitalization method in valuing Husband's interest. Mr. Boland valued Husband's interest at $149,670.00, which was based upon valuation of the corporation's tangible assets ($37,672.74), accounts receivable ($91,992.48), and intangibles[2] ($169,676.00).

---

1. Mr. Smeed calculated this amount by first subtracting the dollar amount of accounts receivable over 120 days old from the total accounts receivable for the corporation ($91,992.48 − $25,694.00 = $66,298.48). He then determined that Dr. Theilen's production rate equalled 28%. Multiplying this production rate by the accounts receivable base he arrived at $18,563.55. Finally, Mr. Smeed determined that the accounts receivable had a collectibility factor of 90%, arriving at a final value of $16,707.20. The problem with this approach is that, regardless of his individual production, Husband had a fifty percent interest in all the receivables by virtue of his ownership of fifty percent of the stock. Therefore, Smeed's calculation of the value of the accounts receivable was incorrect.

2. Mr. Boland valued the intangible assets based on a percentage of gross collections for 1991. Gross collections through September 30, 1991 were $424,191.00. Mr. Boland annualized this figure to account for all of 1991 determining the value to be $565,588.00. Based on a study of dental surveys and statistics and drawing from his own experience, Mr. Boland used a 30% factor multiplied by the gross collections for

Mr. Boland multiplied the total corporation value of $299,341.22 by 50%, thus determining Husband's one-half interest to be $149,670.00.

Husband contends on appeal that Mr. Boland's calculation of his interest was erroneous, and that the trial court erred in valuing Husband's interest at $105,000.00. Husband relies on *Hanson v. Hanson*, 738 S.W.2d 429 (Mo. banc 1987) in charging this error. In *Hanson*, which involved a spouse's interest in an oral surgery partnership, the Supreme Court of Missouri examined goodwill as a marital asset in dissolution proceedings involving a professional practice. *Id.* Goodwill in a professional practice has been defined as "the value of the practice which exceeds its tangible assets and which is the result of the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner." *Id.* at 434 (Mo. banc 1987). Reliance by patients/clients on the reputation and skill of the individual practitioner is generally related inversely to the number of practitioners in the practice. *Id.* at 435. In determining the evidentiary standard for proving the existence of goodwill, the court in *Hanson* indicated that the acceptable method of valuation was the "fair market value" approach. The court stated:

> Because of the difficulties inherent in separating the reputation of the professional from that of his enterprise, evidence that other professionals are willing to pay for goodwill when acquiring a practice is, in our view, the only acceptable evidence of the existence of goodwill. Thus, as a matter of proof, the existence of goodwill is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant geographic and professional market.

*Id.*

■ Under *Hanson*, the trial court may not include a value for goodwill or intangi-

ble factors without there being specific evidence, such as evidence of a recent actual sale of a similar practice, to support it. *Id.* The court in *Hanson* rejected capitalization as an approach to determining goodwill because of the speculative nature of placing a present value on the future earning capacity of the individual professional, and because of the inequity of compelling a professional practitioner to pay a share of a value that is not realizable by sale or other method of liquidation. *Id.* Similarly, in *Taylor v. Taylor*, 736 S.W.2d 388 (Mo. banc 1987), which involved a chiropractic practice, the court specifically rejected testimony by Mr. Boland taking a capitalization approach similar to that taken in this case.

■ Under the *Hanson* approach, the trial court should consider the value of the tangible assets, accounts receivable, and monetary assets of a professional practice. Goodwill will rarely be found to exist in the case of a sole practitioner or small office because of the individualized nature of the client/patient attention. *Hanson*, 738 S.W.2d at 435. A professional share in a large partnership or professional corporation may, in contrast, have a significant goodwill value. When determining the existence of goodwill by reference to sales of similar professional practices, the value of a covenant not to compete should be excluded. *Johnston v. Johnston*, 778 S.W.2d 674, 676 (Mo.App.1989). Perhaps a reason for this rule is that no professional practitioner is required to give up his profession in order to be divorced. Therefore, any value attributable to a theoretical non-competition covenant should be excluded from the calculation.

■ Here, there was no evidence that Husband could sell, on the open market, his interest in the corporation for a value in excess of a proportionate share of the tangible and monetary assets and accounts receivable unless he were to also provide a covenant not to compete. The shareholder agreement of Husband does not include

1991, $565,588.00, to determine an intangible asset value of $169,676.

any covenant not to compete upon the sale of his stock. Apart from a negotiated non-competition agreement, therefore, Husband would be free to compete by opening an office down the street. Indeed, especially with the second floor of the office building now vacant, and available for Husband to rent, it is doubtful any purchaser would pay for any intangible factors in order to purchase Husband's interest. If that is so, the best estimate of what someone would pay is the net value of the tangible assets, the receivables, and the monetary assets.

Respondent suggests that, even if the determination of value is restricted to a "fair market value" approach, nevertheless the evidence of the 1985 transaction involving two other dentists, Yingling and Feldhaus, establishes a basis for finding a goodwill value in the Theilen practice. This court disagrees. The 1985 transactions were not at all comparable to the circumstances at hand. Those were transactions in which each of the dentists constituting the "buyer" in the transactions were paying for the privilege of severing an independent contractor relationship between the respective dentist and the Theilens' corporation. Previously, these dentists had entered into a contract to work in space provided by the corporation and using equipment provided by the corporation in return for the payment of a percentage of revenues to the corporation. In 1985, the relationship was being terminated, and the dentist in each case was being released from a covenant not to compete. The dentist was not buying any physical assets other than patient charts, records, x-rays, and patient lists. In addition, the dentist in each case was buying the percentage interest of the corporation in the accounts receivable. In addition, the corporation was providing a no-compete covenant by agreeing it would not contact, directly or indirectly, the patients whose charts were being purchased by buyer. For these reasons, together with the fact that one of the dentists agreed, as part of the transaction, to lease space from the Twin Center partnership, these transactions are completely distinguishable. See Gerard v. Gerard, 825 S.W.2d 21 (Mo.App.1992).

This case is somewhat unusual in that the professional relationship of the Theilen brothers may be exceptionally close. There is an indication in the evidence that the Theilen brothers would often care for each other's patients somewhat interchangeably. In such a case, it is problematical to determine whether, if Husband were to sell his interest in the corporation and set up a practice down the street or upstairs in the same building, his former patients would stay with the corporation or would be inclined instead to seek out Husband in his new office. Without having specific evidence of this theoretical event, the court has nothing but speculation to entertain in this regard. The trial court may have believed that there was, in fact, a basis for concluding the existence of goodwill in such a circumstance, but at this point it is not supported in the record. *Hanson* leaves open the possibility that expert testimony as to the existence of goodwill in a similar practice in the relevant market could be presented, but it is doubtful such evidence would be available in this case.

Here, the evidence shows that the corporation owns dental equipment of $37,672.24, office furniture of $2,600, dental supplies of $5,000, and office supplies of $200. The corporation had total accounts receivable of $91,992.48, and bank accounts amounting to $15,126.82. This court is unaware of any other factors which should be included in the valuation under the *Hanson* formula. The finding of the trial court as to the value of Husband's interest in the professional corporation, and the order as to the division of marital property based thereon, is reversed because the valuation of the corporation was not based strictly on the competent evidence. The case is remanded for findings and orders consistent with this opinion.

### Award of Child Support

Husband also challenges the award of child support in the amount of $520.00 per child, totalling $1,040.00, claiming the award was erroneous in the following ways: 1) it failed to consider Husband's

income at the time of the dissolution; 2) it failed to consider the award of maintenance granted to Wife; 3) it failed to consider Husband's debts; 4) it failed to consider the actual needs of the children; and 5) there was no evidence to support presumed continuing partnership distributions which were included by the trial court in its calculation of child support.

Husband's first contention is that the trial court erred in its award of child support because the award failed to consider Husband's income at the time of the dissolution. He also contends that the trial court's award of child support surpassed both his own Form 14 calculation, as well as Wife's Form 14 calculations. Husband is mistaken in this contention in that Wife's Form 14 calculated the child support amount at $1,074.03. It is true, however, that the trial judge did not rely on the forms submitted by the parties to determine his calculation of child support. In the decree of dissolution, the trial judge states that "child support under Rule 88.01 and Form 14, consistent with the Findings of Fact made herein by the Court, is hereby determined to be just and appropriate." The trial judge found Husband's gross income to be $6,333.00 per month in the decree of dissolution. He found that Wife's gross income was $760.00 per month, but also found that she could earn $960.00 per month if she were working 40 hours per week. Based upon the trial court's findings, which are supported in the evidence, we conclude that the trial judge performed his own Form 14 calculations based upon his findings, which, according to our calculations, yielded the figure of $1,036.17. The trial court obviously rounded this figure to $1,040.00, in order to obtain the round figure of $520.00 per month per child.

 There is a rebuttable presumption that the child support amount calculated in Form 14 is the amount that should be awarded as set forth in Rule 88.01. A departure from the amount calculated in Form 14 requires a specific finding made by the trial judge that the Form 14 amount would be unjust or inappropriate. *Beeman*

*v. Beeman*, 816 S.W.2d 15, 17 (Mo.App. 1991). The trial judge here prepared his own Form 14 based upon his findings of fact and then rounded his result to obtain $1,040.00 total child support award, or $520.00 per child. Although the court did not round to the nearest dollar, this rounding is close enough that the award should not be disturbed on appeal.

None of Husband's other contentions regarding error of the child support award change the initial determination reached by this court. First, there is no evidence that the trial court did not consider Husband's income at the time of trial. The trial court had numerous exhibits before it for examination, numbering over 100. These exhibits were satisfactory in detailing Husband's sources of income. The trial judge made a finding that Husband's gross income equaled $6,333.00 per month. Nothing in the record mandates a conclusion that this finding was erroneous.

Husband also argues that the child support award should have taken into account the award of maintenance that he is required to pay to Wife. Husband argues "Rule 88.01 sets forth a worksheet which provides for a reduction to the non-custodial parent and a corresponding increase to the custodial parent if there is another court-ordered obligation which results in either payments by non-custodial parent or income by the custodial parent." The Directions for Use of Form No. 14 explain each entry on the worksheet. Line 2b provides a blank for "Other spousal support payments being made." This entry is explained in the Directions for Use as follows: "Enter the monthly amount of any other court or administrative order for spousal support from monthly gross income to the extent that such payments are actually being made to a person not a party to the action." Wife is a party to this action. An entry in line 2b would result from a maintenance order payable to a previous spouse. Therefore, the maintenance award that Husband is required to pay to Wife should not be considered in this entry. This does not mean that the trial court did not consider child support and maintenance in relation to one another.

Indeed, the trial court would have considered the child support in making the award of maintenance.

Husband also suggests that the child support is erroneous because it fails to take into consideration his outstanding debts. Rule 88.01 provides that the child support amount should consider "the financial resources and needs of the parents." Again, the trial court had over 100 exhibits in front of it when making its findings and determinations, plus testimony from both parties to this action. The evidence suggests that all of the financial resources and obligations of both parties were considered. Husband's suggestion is without merit.

Next, Husband contends that the award did not consider the actual needs of the children. Evidence was presented that the expenses of the children were $910.37 per month, which did not take into consideration the expense of housing or utilities. There is no evidence to suggest that the trial court did not consider the actual needs of the children.

 Finally, Husband asserts that there is no evidence to support the inclusion of partnership distributions in Husband's income in the Form 14 calculations. Form 14 Directions for Use provides that gross income includes "income from salaries, wages, overtime compensation, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order." It is clear that partnership distributions would be included in this definition. Nothing in this definition or in Rule 88.01 requires the distributions be stable and fixed as long as there is a reasonable expectation of continuity. Here, it is reasonable to assume that the real estate partnership and Dental Data would continue to generate income for Husband. Therefore, the trial court did not err in including these distributions in the child support calculation. Point IV is denied.

## Maintenance

 Husband's fifth point on appeal is that trial court abused its discretion in awarding Wife $800.00 per month maintenance because the award was unwarranted and wholly beyond the means of Husband to pay, and because Wife has the ability to properly care for herself. Section 452.335, RSMo Supp.1991 sets forth the guidelines that the trial court must follow in awarding maintenance. This section gives the trial court "great latitude" in calculating maintenance. *In re Marriage of Ross,* 772 S.W.2d 890, 893 (Mo.App.1989). A balancing test is utilized in determining the appropriate amount of maintenance which balances the reasonable needs of the party seeking the support against the ability of the other spouse to pay. *Schelsky v. Schelsky,* 796 S.W.2d 888, 892 (Mo.App. 1990). Appellate intervention is not warranted unless the maintenance award is "wholly beyond the means of the spouse who pays maintenance." *Id.* The party challenging the award, in this case Husband, bears the " 'stark burden' to show an abuse of such discretion so as to 'shock' the appellate court's sense of justice." *Id.* This is so because an award of maintenance is presumed correct. *Ross,* 772 S.W.2d at 893.

 Based upon the evidence presented, the trial judge made the following findings: 1) Wife was 41 years old and in reasonably good health; 2) she has a high school diploma and degree in cosmetology with some experience in the early part of the marriage in hair dressing; 3) following a one year period of working in Husband's office, Wife had not been employed outside the home prior to the separation of the parties, since 1980; 4) aside from her current experience as a receptionist in an optometrist office, she has had no other skills or work experience; 5) Wife lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable, at this time, to support herself through appropriate employment; 6) there is no substantial evidence that she will be able to obtain better

employment in the immediate future and, therefore, maintenance should be continuing and modifiable.

Husband points out that Wife has an earning capacity of $11,520.00 a year, an award of personal property of $92,970.00, and a substantial award of marital property. He also states that his net monthly income is $4,463.00 and that after he has deducted the house payment and the child support, he is left with $1,571.00 in funds. Husband testified that in 1990 he had approximately $5,660 in disposable income each month, which contradicts his contention that his net monthly income is $4,463.00.[3] Husband also ignores the fact that the $2,000.00 payments to Wife are required only if he does not sell the house within 180 days after the judgment. If Husband succeeds in selling the residence, he will be relieved of his mortgage payment. From the above it is clear that $800.00 per month in maintenance is not wholly beyond the means of Husband to pay.

Husband further contends that Wife is able to take care of herself based upon her award of marital assets and her earning capacity. The trial court found that Husband made $6,333.00 in gross income per month and that Wife could make $960.00 working on a full time basis. Husband's gross income, therefore, is six times greater than Wife's expected income. Wife testified that aside from her children's expenses, which she calculated as $910.37 not including housing or utilities, she requires an additional $2,752.68 a month to meet her own living expenses. The evidence does not show that Wife has an outstanding earning capacity or that she will develop a substantially greater earning capacity in the near future. The evidence does show that Wife earns substantially less than what is needed to pay her monthly expenses. It has been consistently held that a party is not required to deplete his or her share of marital property before being awarded maintenance. *Barth v. Barth,* 800 S.W.2d 127, 129 (Mo.App.1990).

It also should not be overlooked, and was not overlooked by the trial court, that Wife's efforts in the early years of the marriage contributed to Husband's ability to gain a dental degree and a license to practice dentistry. There was also no evidence that she contributed to the demise of the marriage through any misconduct, while there was evidence of Husband's misconduct. There is no reason to believe that justice requires that Husband be able to abandon his marital responsibilities without having to provide financially for his ex-spouse, even if such provision means that Husband has few resources for his desired lifestyle.

For the foregoing reasons, there was substantial evidence to support the amount of the trial court's award of maintenance. Since, however, the division of marital property will be adjusted as a result of re-evaluation of Husband's interest in the professional corporation, this court hereby sets aside the award of maintenance so that the trial court may re-consider the maintenance award in the light of any adjustment in the property division.

### Tax Consequences

Husband's last point on appeal is that the trial court failed to consider the tax consequences of the division of property or orders concerning debt. However, the record does not show that the trial court was advised of tax consequences which should be considered, and a party who fails to advise the court of tax consequences of a property division will not be heard to complain on appeal concerning such consequences. *In re Marriage of Ross,* 772 S.W.2d 890, 892 (Mo.App.1989). Point VI is denied.

### Conclusion

This court finds that the trial court's evaluation of Husband's interest in the Twin Center partnership and the Dental Data Services partnership were not errone-

---

**3.** It is possible that a reason for this contradiction is the fact that Dr. Theilen's partnership interest in Twin Center has allowed him a sig-

nificant tax shelter. Thus, viewed from the end of the year, his "disposable income" is higher than his net paycheck.

ous. The court finds that the evaluation of Husband's interest in the professional corporation was erroneous in that the court should have found the value of his interest to be limited to the value of the physical assets, investments and operating cash, and accounts receivable.

The award of child support is not erroneous and is affirmed. The award of maintenance is not erroneous; however, we reverse the award and the trial court will be allowed to further adjust the maintenance on remand, if the trial court deems it appropriate and just, because of the possible interrelatedness of the maintenance award and the division of marital property.

The case is remanded to the trial court with instructions to make a new finding of the value of Husband's interest in the professional corporation, allowing nothing for goodwill, and to adjust the division of marital property accordingly. The award of maintenance is reversed and the trial court is also permitted to adjust the award of maintenance, if the trial court deems it just and appropriate, in view of the adjustments made in the other components of the decree. In all other respects, the judgment of the trial court is affirmed.

All concur.