**June Ellen YOUNT, Respondent,**

v.

**Ricky Randal YOUNT, Appellant.**

**No. 17304.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 31, 1991.

Tom K. O'Loughlin, II, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for appellant.

John P. Heisserer, Richey, Price, Rice, Spaeth & Heisserer, Cape Girardeau, for respondent.

PARRISH, Judge.

This is an appeal from certain awards made by the trial court in an action for dissolution of marriage. Appellant Ricky Randal Yount (husband) appeals the distribution of marital property, the award of maintenance to respondent June Ellen Yount (wife), and the award of custody of the two minor children of the parties. This court affirms.

As a court-tried case, this case is reviewable in the manner prescribed by Rule 73.-01(c) as that rule has been interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

1. References to statutes are to RSMo Supp.1990.

banc 1976). Further, as stated in *Buchheit v. Buchheit*, 768 S.W.2d 641, 642 (Mo.App. 1989):

When there is a conflict in the evidence, the trial court determines the credibility of the witnesses. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). The judgment of the trial court is to be affirmed under any reasonable theory supported by the evidence. *Id.* Deference is accorded the trial judge even if there is evidence which might support a different conclusion. *Id.*

The parties to this action married November 30, 1974. The wife filed her petition seeking dissolution of the marriage November 2, 1989. On November 29, 1990, the trial court entered a decree of dissolution. The decree divided marital property between the parties; awarded primary custody of the two minor children of the parties to the wife; granted visitation rights with the children to the husband; ordered the husband to pay child support in the amount of $200 per month; and awarded maintenance to the wife in the amount of $100 per month. Additional facts that relate to the issues presented by this appeal will be set forth, as applicable, in the discussions of the various points presented.

The husband's first point on appeal is directed to the trial court's division of marital property. It asserts that the "division of the marital assets and debts" is "disproportionate" and contends that the trial court's division of marital property "amounted to improper judicial censure because the court placed undue emphasis upon [his] marital misconduct." He argues "that the majority of evidence relating to such conduct was inadmissible hearsay;" that "there was no evidence that the misconduct imposed additional burdens on [his wife] or any damage to her."

Section 452.330 [1] directs that in dividing marital property, a court shall consider "all relevant factors," including (1) economic circumstances of each spouse; (2) contributions of each spouse to the acquisition of marital property; (3) value of any nonmari-

tal property set aside to each spouse; (4) conduct of each spouse during the marriage; and (5) the custodial arrangements for minor children. In considering economic circumstances, the court is to consider the desirability of providing for the family home to be available to the party who has custody of the children of the marriage. The relative contributions of the parties to acquisition of marital property is to include assessment of contribution of a spouse as homemaker.

The trial court received evidence regarding the economic circumstances of the parties. Joint income tax returns for 1987 and 1988 were admitted in evidence and each party's individual income tax return for 1989 was admitted in evidence. There was testimony regarding the price originally paid for the residence that had been the family home and estimates as to its value at the time of the trial. The wife testified about the financial aspects of a trucking business the parties had operated. She had maintained the financial records and had paid the bills incurred in the operation of the business. The husband had driven and maintained a tractor-trailer as an "owner-operator." There was testimony regarding the cost of the tractor-trailer, the amount owed on the debt incurred for its purchase and the condition of the equipment at the time of trial. Each party filed written statements identifying the property they owned and their estimates as to its value, as well as statements of income and living expenses.

The role of each party during the marriage was explained, including that the wife stayed in the home—that the husband wanted her to stay home with the children. She testified that there were times when she would have liked to have a job, but he did not want her to get a job. There was no evidence of any nonmarital property.

The trial court heard testimony about the conduct of the parties during the marriage. The wife testified that her husband had "several different affairs" with other women; that he had admitted his involvement in several affairs to her; that the affairs had occurred "all through the marriage." She was asked the following questions and gave the following answers:

Q. Okay. Can you tell the Court how you discovered that your husband was involved with other women?

A. You live with somebody, you pretty well—I mean, you know, you know. You can tell the way they act. I began to suspicion different things happening, and I began to look for signs of this act.

Q. How would you look for signs?

A. Once, in his pickup truck, I found a condom, which we did not need—

Q. What [sic] didn't you need it?

A. —because I was on birth control pills; and he didn't know how it got in his pickup. That was his response whenever I questioned him about it. I have found them in the big truck, the semi-truck, when he was driving for other people, plus the one that we own now. I found cards, pictures, phone numbers of women. . . .

The parties had one previous separation. It occurred because of the husband's affairs with other women. They reconciled. The following testimony was given with respect to what occurred after the reconciliation:

Q. And what happened after that?

A. He was faithful probably a year, and he went back to it again.

Q. And that's why you're here today?

A. Yes, it is.

The wife testified that she found illegal drugs "three or four times" in the truck her husband drove.

Each party testified about how he or she would provide for the children if awarded custody. The wife asked for the court to award her the house. She desired to continue to have it for use as her and the children's residence. The husband testified that his mother and other family members were available to help with the children if he needed them, "they'll be there."

The court divided the marital property as follows:

| To Husband | To Wife |
|---|---|
| The trucking business and "all assets thereof including the 1983 Kenworth tractor and 1987 Ravens Trailer." | The marital home. |
| | Household goods, supplies and personal effects in her possession at time of trial. |
| All household goods, supplies, furnishings, and personal effects in his possession at time of trial. | 1987 Oldsmobile automobile. |
| | 1 Honda three-wheeler. |
| 1977 Chevrolet pickup truck. | Her own bank account and "IRA." |
| 1 Honda three-wheeler. | |
| His own bank account and "IRA." | |

The award of the residence to the wife was "subject to the debt against same ... in the approximate principal sum of $11,-727.44" which she was ordered to "pay, assume and hold [the husband] harmless therefrom." The husband's award of the tractor-trailer was likewise subject to an existing debt "in the approximate principal sum of $39,000.00 which [the husband] shall pay, assume and hold [the wife] harmless therefrom." The automobile awarded the wife was also subject to an encumbrance to be paid by her and for which she was to hold the husband harmless.

The parties did not request the trial court to provide specific values for the marital property. The court, accordingly, was not required to do so and did not do so. *See In re Marriage of Harrison*, 787 S.W.2d 738 (Mo.App.1989). The husband, by his brief, argues that the relative values of property awarded to each party, "based on an *average* of the values assigned by each party," amounts to $19,250 for property awarded to him and $59,016.34 for property awarded the wife, or 24.6% for the husband and 75.4% for the wife. The wife's brief values the property awarded as $29,400 to the husband and $45,212.44 to her, or 39.4% for the husband and 60.6% for the wife.

Three issues are identified in the first point on appeal: (1) the focus of the trial court on the husband's marital misconduct; (2) whether there was competent evidence of marital misconduct and if any inadmissi-ble evidence was considered, whether it was prejudicial; and (3) what effect any marital misconduct by the husband had upon the wife.

■ The trial court's decree included the statement: "It is further ordered that [the husband] has been guilty of marital misconduct and that the court has considered said conduct in reaching its decision with respect to division of property." As noted, § 452.330.1(4) identifies the marital conduct of each spouse as a relevant factor for consideration in dividing marital property. The fact that the decree noted the trial court's determination that the husband had been guilty of marital misconduct does not constitute placement of undue emphasis on that factor so as to constitute "judicial censure." It amounts to an acknowledgement that there was sufficient credible evidence to establish that the husband was guilty of marital misconduct. Such a statement in a decree is not unique. E.g., *see Buchheit v. Buchheit, supra,* at 641–42. A trial court cannot place undue emphasis on one statutory factor that must be considered in distributing marital property and not consider the others. *Goller v. Goller*, 758 S.W.2d 505, 508 (Mo.App.1988). The trial court did not do so in this case.

■ The husband's complaint that inadmissible hearsay evidence of misconduct

was considered is directed to a group of cards and papers admitted into evidence as petitioner's exhibit 10. The letters included in the exhibit can appropriately be characterized as "love letters," and the cards contain verses and penned notations evidencing passionate thoughts directed from the senders to the recipient. They were part of a single exhibit. The wife described that exhibit as a "file" in which she put cards and letters that she found.

At the conclusion of the testimony on behalf of the wife, the trial court inquired of the husband's attorney, "Do you have any objection to any exhibit being entered into evidence?" The attorney replied, "Judge, the only one is the dossier affair, which has all kinds of hearsay stuff in it, not relevant or material. I think that's 14, I believe. That's the one I objected to previously, Judge, and you reserved your ruling." After some discussion about whether the wife's attorney was offering exhibit 10, an inquiry was made regarding whether the exhibit was entered into evidence. The court responded, "Yes. All the ones that were offered by the Plaintiff [sic], I have entered into evidence."

A review of the transcript does not conclusively demonstrate that the husband's attorney timely objected to the admission of exhibit 10. The wife testified that she had found "cards, pictures, phone numbers of women." She started to tell of having called one woman for whom she had a phone number. The husband's attorney objected saying, "Objection to what the lady might have said. Hearsay." The transcript does not show any ruling on that objection. The wife's attorney then told his client that she could not testify about what the lady said. Additional questions were asked regarding whether she had confronted her husband "with these cards and letters and pictures." There was no objection at that time. Later, in the wife's testimony, she was asked if her husband had a problem with illegal drugs. She answered that he did. She was then asked, "Tell the

Court what problem he has there." At that time, the husband's attorney posed the following objection:

Your Honor, I want a continuing objection to all of these things that they're saying to trash the father of her children based upon the fact that they have not advised us that they were going to do that; and that's, I think, highly unfair to come in here at the last minute with exhibits and testimony without adequate notice to the other party.

The trial court responded, "Your continuing objection will be noted."

The letters and other writings included in exhibit 10 were hearsay in that they constituted out-of-court statements by third parties and, as such, "are inadmissible to prove the truth of the matters asserted therein because they are hearsay and not subject to cross-examination." *Jones v. Rennie*, 690 S.W.2d 164, 167 (Mo.App. 1985). *See also Venator v. Venator*, 512 S.W.2d 451, 454–55 (Mo.App.1974). If the hearsay objection were timely, it was error to overrule it.[2] It is unnecessary to pursue the question of the timeliness of the objection. The wife testified that her husband had admitted to her of infidelity during the marriage and the husband testified that he had been unfaithful to his wife. The admission of the hearsay evidence in exhibit 10 was not prejudicial. It was merely cumulative. As such, it did not materially affect the merits of the action. *See* Rule 84.13(b). The admission of the hearsay evidence would not afford a basis to reverse the judgment of the trial court. "[T]he admission of improper evidence is not ordinarily a ground for reversal in a nonjury case, at least where it did not appear to have played a critical role in the court's decision." *Kramer v. Leineweber*, 642 S.W.2d 364, 369 (Mo.App.1982).

■ The last issue presented by the husband's first point on appeal is his contention that "there was no evidence that the misconduct imposed additional burdens on

---

**2.** In *Schelsky v. Schelsky*, 796 S.W.2d 888, 893–94 (Mo.App.1990), letters from a third party were admitted in evidence with respect to a claim that a husband engaged in "affectionate relationships." The objection that was made in *Schelsky* was that the letters were not relevant. The opinion in that case does not indicate that any hearsay objection was made.

[the wife] or any damage to her." In *Balven v. Balven*, 734 S.W.2d 909 (Mo.App. 1987), at l.c. 913, the Eastern District of this court concluded, "Marital misconduct is a factor only when the offending spouse's misconduct placed extra burdens on the other spouse." That court determined that misconduct that occurred "at the end of the marriage" had not been shown to impose additional burdens on the wife. *Id.* And, in *Burtscher v. Burtscher*, 563 S.W.2d 526, 528 (Mo.App.1978), the Eastern District found that marital misconduct, if any, "occurred near or after the parties' separation." The court said, "It occurred during only a small portion of a 24 year marriage, and there is no indication it imposed any particular burdens upon the wife." *Id.* A similar result was reached in *Rising v. Rising*, 608 S.W.2d 510 (Mo.App. 1980). There, the misconduct involved a wife moving from her husband's home and thereafter associating with another man. *Id.* at 512.

However, in *Buchheit v. Buchheit, supra*, the trial court determined that evidence showed that a husband's relationship with another woman occurred during the course of his marriage and that there was evidence of the husband's displaying anger toward and mistreatment of his wife. The trial court, in *Buchheit*, concluded that the husband's conduct was "reprehensible" during the marriage and considered that conduct in awarding property in a manner favorable to the wife. 768 S.W.2d at 643. On appeal, it was held that the trial court did not commit an abuse of discretion.

Here, there was evidence that the husband maintained illicit relationships at various times during his marriage. There was evidence of illegal drug use by him. There was evidence that he had displayed anger toward his wife without provocation and in the presence of the children of the parties; that he had on at least two occasions physically abused her. Based upon that evidence, this court finds the conduct of the husband imposed burdens upon the wife during the course of the marriage and that the husband's conduct was a proper factor to be considered in distributing the marital property.

As stated in *Dove v. Dove*, 773 S.W.2d 871, 873 (Mo.App.1989), with respect to dividing marital property:

> The division should be just and equitable taking into account the statutory factors. [Citation omitted.] As often stated, a division of marital property doesn't have to be even, it just has to be fair. [Citation omitted.]

The court, in *Dove*, pointed out that it had upheld a 72% and 28% division of marital property and an 88% to 12% division, *citing Arp v. Arp*, 572 S.W.2d 232 (Mo.App.1978); and *In re Marriage of Burris*, 557 S.W.2d 917 (Mo.App.1977). *Id.*

This court finds that the trial court did not abuse its discretion in its division of marital property in this case. The husband's first point on appeal is denied.

■ For his second point on appeal, the husband contends that the trial court erred in awarding maintenance for the reason that the evidence did not establish the statutory basis for its award. He cites § 452.-335.1. He further contends as part of his second point on appeal, that the trial court erred in allowing the wife to present evidence in support of maintenance and in allowing her to amend her petition to seek maintenance. He claims he could not protect his interest "in light of this surprise request."

The wife commenced her action for dissolution of marriage November 2, 1989. Her petition did not request maintenance. On March 16, 1990, she filed a motion for leave to file a first amended petition. A copy of a first amended petition for dissolution of marriage is included in the legal file that is before this court on appeal. The pleading has a "filed" stamp on its face that bears the date "March 28, 1990." A hand-written docket entry dated April 25, 1990, states, "Def's motion for leave to file first amended petition granted." It is followed by initials that appear to be "WH."

The trial commenced September 11, 1990. After hearing testimony from three witnesses and part of the testimony from a fourth witness, the trial was continued until October 26, 1990.

Near the end of the proceeding that was held on September 11, the wife was testifying. Her attorney—after having inquired about her current and past employment and the nature of her husband's work and his earnings—asked if she was requesting maintenance. She answered, "Yes." Her attorney responded, "Okay," after which the attorney for the husband stated: "I'm going to object to that, Your Honor. I believe that's beyond the scope of the pleadings." No ruling was made on the objection. The wife's attorney proceeded "on another issue."

Shortly after the testimony and objection as to whether the wife was requesting maintenance, the court continued the case in order for the remainder of the evidence to be presented at another date. The trial of the case was scheduled to resume on October 26, 1990. On October 5, 1990, the wife's attorney filed a motion seeking leave to file a second amended petition and tendered the proposed pleading for filing. In the proposed second amended petition, the wife requested maintenance.

Before further testimony was presented on October 26, the wife's attorney brought the matter of the motion to file a second amended petition to the attention of the court. The husband's attorney objected to the request. After considerable discussion, the trial judge told the attorneys, "I'm going to take that motion under advisement, and I will let you put on evidence to that effect; but I'm going to reserve that ruling." No request for a continuance or other relief was made on behalf of the husband. The court then proceeded to hear the remaining testimony of the wife. That testimony included cross-examination by the husband's attorney about her employment and her ability to earn an income.

The evidence was completed on October 26. The trial court took the case under advisement. On November 29, 1990, the trial court entered its decree dissolving the marriage and granting the relief previously described. Although the trial court did not make a specific ruling on the request to file a second amended petition, the petition that requested maintenance, its decree included the following paragraph:

It is further ordered that Petitioner is unable to adequately support herself through appropriate employment and is the custodian of the minor children whose circumstances make it inappropriate that she be required to seek additional employment outside the home and therefore is awarded maintenance in the sum of $100.00 per month as and for maintenance commencing December 1st, 1990.

The husband cites three cases for the proposition that the trial court erred in permitting the wife to present evidence on the issue of maintenance. He cites *Tebbetts v. McElroy*, 56 F.2d 621 (W.D.Mo. 1932); *Myers v. Moreno*, 564 S.W.2d 83 (Mo.App.1978); and *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App.1964). None of the cases cited are dissolution cases. Hence, none deal with maintenance. Each case deals with the general principle that a party proceeded against is entitled to notice and an opportunity to defend. Their facts are not similar, in any respect, to the facts in this case. The cases cited are of no help to the husband.

On the first day of trial, September 11, the wife's attorney elicited testimony from her concerning her economic status, her earning capacity and that of her husband. No objection was made to that line of inquiry. The husband's attorney's first objection to that inquiry occurred when the wife was specifically asked if she was requesting maintenance.

In *Czapla v. Czapla*, 801 S.W.2d 785 (Mo.App.1991), a husband complained that a trial court erred in awarding maintenance because there was no request for maintenance in his wife's pleadings. In *Czapla*, the wife had testified about her financial needs and the trial court had awarded maintenance. *Id.* at 786. The Eastern District of this court affirmed as to the maintenance award saying:

When a party has failed to ask for maintenance by an appropriate pleading in a dissolution proceeding, an award for maintenance may be granted by the trial

court when the issue of maintenance has been tried by consent of the parties, or *when substantial evidence relevant to the issue has been introduced.* (Emphasis added.)

*Id.*

A scenario similar to the one in this case occurred in *Riley v. Riley,* 778 S.W.2d 666 (Mo.App.1989). There, the wife had not asked for maintenance in her pleadings. Further, in *Riley,* the wife never sought to conventionally amend her pleadings for that purpose. Initially, when she sought to introduce evidence regarding her need for maintenance, an objection was made that she had not requested maintenance by her pleadings. The objection was sustained. Later, numerous questions were asked "relevant to and bearing upon maintenance." *Id.* at 668. No objection was made to those questions. The trial court denied maintenance. On appeal, the case was reversed and remanded because the trial court misapplied the law in denying maintenance. *Id.* at 669. The appellate court held:

> Failure to object to evidence offered beyond the scope of the pleadings results in automatic amendment of the pleadings to conform to the evidence and is a consent to try the applicable issues. Rule 55.33(b); *Sparks v. Consolidated Aluminum Co.,* 679 S.W.2d 348, 353 (Mo.App.1984); *Arnett v. Venters,* 673 S.W.2d 67, 72 (Mo.App.1984). Mr. Riley's failure to object to questions soliciting Mrs. Riley's answers regarding her need for maintenance constituted an implied consent to try the maintenance issue, and Mrs. Riley's responses to the questions resulted in an automatic amendment to her answer.

*Id.*

In this case, the inquiries about the economic circumstances and needs of the parties occurred prior to any objection made on behalf of the husband. This resulted in the automatic amendment of the pleadings to conform to the evidence and constituted an implied consent to try the applicable issues. *Czapla v. Czapla, supra,* at 787.

Section 452.335.1 permits the award of maintenance if the trial court finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. There was sufficient evidence before the trial court to have permitted it to conclude that the wife, absent maintenance, lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment. Further, in view of the practice during the course of the marriage for the wife to remain in the home "with the children" at the desire of her husband, there is sufficient evidence for the trial court to determine that, as the custodian of the minor children, there were circumstances making it inappropriate that she seek additional employment outside the home.

The husband had been the primary income producer with the wife assisting by performing bookkeeping duties necessary for the operation of their trucking business. That business, the only income-producing asset of the marriage, was awarded to him. It was no longer available to her for purposes of providing for her needs. She had a job that paid $4.90 per hour. Her monthly statement of income and expenses, filed with the trial court and referred to by the wife in her testimony, showed monthly expenditures in excess of her monthly income.

In *In re Marriage of Schatz,* 768 S.W.2d 607 (Mo.App.1989), this court said, at l.c. 612:

> In general, it is true to say that a trial court is vested with considerable discretion in granting maintenance awards, and our appellate courts have interfered with awards of maintenance only when the order is patently unwarranted or is wholly beyond the means of the spouse who pays maintenance.

The trial court's award of maintenance was not an abuse of its discretion. The husband's second point is denied.

■ For his third point on appeal, the husband asserts that the trial court erred in that it abused its discretion by granting primary custody of the two children of the marriage to the wife. He contends that the trial court failed to consider joint custody as prescribed by §§ 452.375.2 and 452.-375.4.

In asserting that the trial court erred in awarding custody of the children of the parties, a boy age 13 and a girl age 9 at the time of trial, to the wife rather than the award of joint custody, the husband has not indicated whether he sought joint legal custody, § 452.375.1(1), or joint physical custody, § 452.375.1(2). Likewise, in reviewing the record on appeal, this court finds no record of any request for one or the other being made to the trial court. The husband, in his testimony, requested "joint custody" without further explanation.

The evidence is clear that the husband was away from his home for extended periods of time due to his occupation as an owner-operator of a truck used to haul freight. There was testimony that he had a history of illegal drug use, including having had controlled substances where his wife found them when he returned home. There was testimony that when he used drugs, his demeanor varied from what it was on other occasions. Further, there was testimony that the husband resorted to violence in the presence of the children, including one occasion when he forcibly pulled his daughter from his wife after having pushed the wife to the floor. The child asked to be put down. He responded, "I'm taking you away from your mother because she's crazy." The trial court was entitled to believe or disbelieve any of the testimony presented. *In re Marriage of Smith*, 785 S.W.2d 764, 767 (Mo.App.1990). As noted previously, there were no findings of fact and conclusions of law made by the trial court. In their absence, this court assumes all facts were decided by the trial court in keeping with the judgment. *Mass-*

*man v. Massman*, 784 S.W.2d 848, 850 (Mo.App.1990).

The trial court was required to determine custody in accordance with the best interests of the children. Section 452.370.2. This court finds no abuse of discretion by the trial court in awarding custody to the wife and allowing the husband visitation with the children at designated times. The third point on appeal is denied. The judgment of the trial court is affirmed.

PREWITT, P.J., and CROW, J., concur.

