**Alfonso HERNANDEZ, Appellant–Respondent,**

v.

**Margaret HERNANDEZ, Respondent–Appellant.**

**Nos. WD 47808, WD 47863.**

Missouri Court of Appeals,
Western District.

March 22, 1994.

---

Allen S. Russell, Kansas City, for appellant-respondent.

Nancy A. Beardsley, Kansas City, for respondent-appellant.

Before ULRICH, P.J., TURNAGE, C.J., and SPINDEN, J.

SPINDEN, Judge.

Alfonso Hernandez appeals the trial court's decree dissolving his marriage to Margaret Hernandez, complaining of the trial court's award of non-modifiable maintenance for 36 months to his ex-wife and the court's division of the marital estate. Margaret[1] cross-appeals, complaining of the duration and amount of her maintenance and the trial court's failure to award her attorney fees. We reverse the trial courts award of maintenance and affirm the division of the marital estate and the award of attorney fees.

The couple married on February 2, 1963, and separated on December 26, 1990. Three children born to the marriage were emancipated when the couple divorced. In 1978, the couple started an insurance adjusting business, Hernandez Claim Service, Inc. Margaret served as the business bookkeeper and office manager, and Alfonso was the claims adjuster. Hernandez Claim Service went out of business; the couple decided to close it because of their impending divorce. The most significant asset of the marriage was the couple's residence.

Alfonso works in St. Louis as a claims adjuster. He nets $1794 a month. He lists his monthly expenses as $3662. Margaret is a student at Central Missouri State University. She is unemployed and claims to have no income. She reports monthly expenses of $1905.50.

Alfonso had an ongoing sexual affair with Beverly Spicer beginning in 1979. He told his wife about the affair in May 1980, but it continued. After several brief separations, the couple finally separated in December 1990 after Margaret learned that her husband had spent the day after Christmas with Spicer. Alfonso lives with Spicer.

Review of the issues in this appeal is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the trial court's judgment unless it is not supported by substantial evidence, misstates the law, or misapplies the law. *Id.*

### I. MAINTENANCE

Both parties contest the trial court's award of maintenance of $580 a month for 36 months to Margaret. Alfonso claims that Margaret does not qualify for maintenance and that the award exceeds his ability to pay. Margaret argues that the trial court misapplied the law in determining the amount of maintenance and in limiting its duration.

Section 452.335.1, RSMo Cum.Supp.1993, allows for an award of maintenance only if the spouse seeking maintenance meets a two-part test: (1) the spouse lacks enough property to provide for his or her needs, and (2) the spouse "is unable to support himself [or herself] through appropriate employment."

The purpose of maintenance is to permit "the receiving spouse to readjust financially during a period of dependency until that spouse can achieve a reasonable measure of self-sufficiency." *Cates v. Cates*, 819 S.W.2d 731, 736 (Mo. banc 1991). Thus, "[i]mplicit in a limited maintenance award is the conclusion the recipient spouse will be self-supporting at the end of the time period." *Clark v. Clark*, 801 S.W.2d 95, 97 (Mo.App.1990).

[A] decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial condition of the parties.... Substantial evidence must exist supporting a reasonable expectation that such a change will occur.... Maintenance should not be

---

1. We refer to the parties by their first names for the reader's ease.

prospectively terminated unless the evidence indicates that the circumstances of the parties will be markedly different in the future.... Because of the justification required for maintenance awards of limited duration, the judicial preference is for awards of maintenance of unlimited duration.

*Smith v. Smith*, 840 S.W.2d 276, 277 (Mo. App.1992) (citations omitted).

■ Margaret qualifies for maintenance. With no permanent job and no income-producing property, she lacks sufficient resources to provide for her needs. Alfonso points to her past jobs of claims adjusting, bookkeeping, and secretarial work, and argues that she is capable of many jobs. The evidence does not support his claim. The record shows that she has applied for many jobs—usually clerical or secretarial—with no success. Her skills are limited, and, at age 49,[2] many are outdated. We find no evidence that she is a qualified claims adjustor. She has earned $7 an hour as a receptionist and office worker for a period after the separation. She testified that with her present abilities she can get a clerical job earning only $14,000 to $16,000 per year. This is too low to meet even her minimal needs.

Alfonso argues that the trial court should have denied Margaret any maintenance because "it was merely [Margarets] choice to return to school rather than ... obtaining full-time employment." Section 452.335.2(2) specifically allows a trial court to consider "[t]he time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment" when deciding whether maintenance should be awarded. See *Baker v. Baker*, 815 S.W.2d 493 (Mo.App.1991). Although "[a] spouse requesting maintenance has an affirmative duty to seek employment[,] ... courts are reluctant to discourage the education of a party to a dissolution." *McCallister v. McCallister*, 809 S.W.2d 423, 429 (Mo.App.1991). A college degree should help Margaret become self-sufficient. Requiring maintenance while she is attending school was appropriate.

■ The trial court, however, should not have limited the maintenance's duration to 36 months. Margaret anticipated getting her degree in two years, but she did not know "exactly" when she would receive her degree or be able to find self-supporting employment. She said that she already had to drop to less than a full course load for one semester because she was failing a class. Even if she completed her education within two years, nothing in the record established a reasonable probability that she would be able to obtain employment with sufficient income to support herself within one year. "Awards of limited duration should not be based on speculation as to future conditions of the parties.... Husband's sole recourse should be to institute a proceeding to modify the award when Wifes circumstances change." *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 265 (Mo.App.1988) (citations omitted). Thus, the trial court abused its discretion when it ordered limited maintenance.

■ Alfonso claims that the trial court erred in setting maintenance at $580 a month because that amount "exceeds [his] financial ability to pay particularly when considered in conjunction with other financial obligations imposed upon him by the court." Before we interfere, we must conclude that the amount of maintenance awarded was patently unwarranted and wholly beyond Alfonso's means. *Grams v. Grams*, 789 S.W.2d 846, 850 (Mo. App.1990). Section 452.335.2 requires consideration of these factors when determining the amount of maintenance:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently[;]

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

2. Margaret was 49 at the time of the trial.

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age ... of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage[.]

These factors are not exclusive. *In re Marriage of Reed*, 762 S.W.2d 78, 85 (Mo.App. 1988).

We find no reason to disturb the amount of maintenance awarded by the trial court. In making his claim that $580 a month exceeds his ability to pay, Alfonso includes in his $3662 of monthly expenses a $478 house payment and other payments totalling $1075 a month: $500 a month to his attorney, $25 a month to a department store, and $550 a month to repay loans from his father. Margaret makes the house payment, and the debt to his father was reduced to $3000 by the time of the trial.[3] Alfonso listed his monthly expenses at $600 for rent, $270 for utilities, $625 for automobile expenses, and $250 for food. Given Spicer's testimony that she was splitting living expenses with him, these amounts appear excessive.[4] Thus, the trial court had justification in setting the maintenance award. "The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record.... The trial judge, as the trier of fact, can disbelieve testimony even when uncontradicted." *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo. App.1991) (citation omitted).

■ Margaret argues that the amount of maintenance should be raised because it is insufficient to meet her reasonable monthly expenses. The trial court is not required to meet every need of the spouse receiving maintenance when it determines the amount to be paid. *May v. May*, 801 S.W.2d 728, 732 (Mo.App.1990). The maintenance award of $580 a month was within the broad discretion given to the trial judge and we discern no reason to upset it.

■ Alfonso complains that the trial court placed undue emphasis on his extramarital affair, ignored his good conduct during the marriage, and ignored Margarets misconduct.[5] The trial court found "[t]hat [Alfonsos] extramarital relationship, in effect, brought about the demise of the family business, HERNANDEZ CLAIM SERVICE, INC.; and had [he] attended to the business, it would have been a successful business operation and a valuable marital asset[.]" Alfonso claims that this shows that the trial court abused its discretion. Although the evidence does not support the trial court's finding that the business was ruined as a direct result of the affair, we find no indication that the trial court placed undue emphasis on this factor. That the court mentioned it in the decree does not indicate that the court gave it any more weight than any of the other statutory factors. See *Yount v. Yount*, 821 S.W.2d 876, 879 (Mo.App.1991) (finding that the trial court's mention of marital misconduct in its decree did not indicate that it relied on that factor so as to be judicial censure or undue emphasis). We assume that the trial court considered all the evidence before it regarding these factors. *Cofer v. Price–Cofer*, 825 S.W.2d 369, 375 (Mo.App.1992).

## II. DIVISION OF THE MARITAL ESTATE

■ Alfonso complains that the trial court abused its discretion in dividing the marital

---

3. The two loans from Alfonso's father totalling $6000 and listed at that amount in the divorce decree were the only marital debts designated to him. He testified that the balance of these loans was $700. His attorney later stated that he checked his records and the remaining balance actually was $3000. The wide variance in his figures casts doubt as to the real balance of the loan. At the very least, the decree overstates the marital debts given to Alfonso by $3000.

4. Spicer testified that she and Alfonso pooled their resources and shared expenses which, she agreed, "work[s] out to be pretty much a split of everything."

5. Margaret cashed checks from American Family Insurance by signing Alfonso's name on them. She claims that she did so with Alfonso's knowledge, but he contradicts this.

estate by unduly weighing the division in Margaret's favor. The trial court awarded her a house valued at $60,500 [6] with a mortgage balance of $30,065 and other property totalling $1056. The judge also awarded her a Pontiac Firebird convertible but assigned no value to it. It designated $9454 in debt to her and gave her the $6900 contingent liability to American Family Insurance.[7] Alfonso received $6458 in marital assets and was assigned $6000 of marital debt.[8]

■ Section 452.330, RSMo Cum.Supp. 1993, requires a court to "divide the marital property in such proportions as the court deems just after considering all relevant factors[.]" Like the statute governing awards of maintenance, this statute asks the court to consider the economic circumstances of each spouse and the conduct of the parties during the marriage when dividing the marital estate. These factors reflect the premise that the court is not required to make an equal division, only one that is equitable. *Cofer*, 825 S.W.2d at 374.

Alfonso argues that the values assigned to the marital property by the trial court were improper because it used values suggested by Margaret. Evidence supported all the values. The trial court did not abuse its discretion by believing Margaret's testimony rather than Alfonso's.[9] *In re Marriage of Smith*, 785 S.W.2d 764, 767 (Mo.App.1990).

■ Alfonso complains that the trial court did not assign a value to a Pontiac Firebird convertible awarded to Margaret. A trial court is not required to place a specific value on all items of marital property when the parties do not request it and where the court has sufficient evidence to enable a just division. *Roth v. Roth*, 760 S.W.2d 616, 618 (Mo.App.1988). Neither party requested a finding of the car's value. Margaret valued

the car at $2500. Alfonso set it at $8500, but he acknowledged that the value could be lower. The trial court awarded the other marital vehicle, valued at $3000, to Alfonso. We find sufficient evidence indicating that awarding the Firebird to Margaret was just.

■ Alfonso argues that the trial court should not have included all of Margaret's debts as legitimate marital debts. He contends that they should not have been a factor in the property division because Margaret "had no need of borrowing additional funds . . . as she received ample funds from marital sources and had most marital expenses paid by [Alfonso] during the entire separation." The trial court was not required to include any of the marital debts in the property distribution. Division of marital debts is only one of the considerations in a just division. *Barth v. Barth*, 790 S.W.2d 246, 252 (Mo.App.1990). We presume that the trial court considered all the evidence before it. *Ludlow v. Ahrens*, 812 S.W.2d 245, 249 (Mo.App.1991). We discern no abuse of discretion in requiring Margaret to repay the debt she accumulated after separation but prior to the divorce decree.

Alfonso argues that the percentages of the marital estate each party received is evidence of an abuse of discretion. Describing the division in such a way, without examining the specific property each party was awarded, is meaningless. *May*, 801 S.W.2d at 734. The disparity in the net awards is due, in large part, to Margaret's receiving the house as part of her property. Given that she received approximately $30,000 of the debt on the house along with the house, and given her economic situation as compared to Alfonso's economic situation, we find ample evidence to support the trial court's division of the marital property.

6. The trial court found that the house's value was "SIXTY THOUSAND FIVE HUNDRED DOLLARS ($60,000)." Amounts stated as words take precedence over Arabic numbers, so we find that the court valued the house at $60,500. See, e.g., U.C.C. § 3–118(c).

7. See Note 5, supra.

8. See Note 3, supra.

9. Alfonso states that his estimation of the house's value should be followed because it was based on an appraisal by a licensed real estate appraiser and Margaret's was not. The trial court was free to believe Margaret's valuation even in the face of contradictory evidence by an expert. *In re Marriage of Smith*, 785 S.W.2d 764, 767 (Mo. App.1990). Alfonso also disagreed with his expert's appraisal and suggested that the house's real value was $13,000 to $23,000 higher.

Alfonso emphasizes the trial court's finding that his affair caused the collapse of Hernandez Claim Service as evidence that the trial court abused its discretion in dividing the marital property. We apply the same analysis as we outlined in our discussion of that claim under Point I.

### III. ATTORNEY FEES

The final point concerns whether the trial court was correct in ordering each party to pay its own attorney fees. Section 452.355, RSMo.Cum.Supp.1993, provides that the trial court "may" allocate to the other party any portion of the other party's attorney fees. The court must consider "all relevant factors including the financial resources of both parties[.]" Section 452.355.1. We will overturn the trial court's decision not to allocate attorney fees only if we find manifest abuse of discretion. *May*, 801 S.W.2d at 734. We do not find an abuse of discretion.

Margaret asks us to consider the parties financial resources in reviewing the trial court's decision. The record does not indicate the amount of either party's attorney fees, but, even without that information, we determine that the just solution was to require each to pay his or her own fees. Although Alfonso's earning power is greater than Margaret's, the evidence indicates that he is unable to pay her fees, whatever they may be. Additionally, Margaret received a large portion of the marital assets. Finally, although a court must look at the parties' financial resources in allocating attorney fees, that examination is not dispositive. *Plunkett v. Aubuchon*, 793 S.W.2d 554, 560 (Mo.App.1990).

Margaret emphasizes Alfonso's misconduct during the marriage in contending for assignment of her attorney fees to him. The point is without merit. As we noted earlier, the trial court found that Alfonsos misconduct ended the couple's business; yet, the court required the parties to pay their own attorney fees. This indicates that the trial court gave Alfonsos misconduct due consideration. We discern no abuse of discretion.

### IV. CONCLUSION

The trial court erred in awarding Margaret Hernandez maintenance of limited duration. We reverse and remand with instructions that the trial court order Alfonso Hernandez to pay Margaret Hernandez modifiable maintenance of $580 a month without limit as to duration. We affirm the trial courts division of property. We affirm the trial courts decision requiring the parties to pay their own attorney fees.

All concur.